## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement" or "Agreement"), dated as of December __23__, 2022 (the "Effective Date") memorializes an agreement to settle litigation by and between the Aleksander Shul, Shnior Zalman Denciger ("Denciger") and University Realty USA LLC ("URU") (collectively "Plaintiffs") and the City of University Heights, Ohio ("City") and Mayor Michael Dylan Brennan ("Mayor"). Plaintiffs, the City, and the Mayor are referred to herein collectively as the "Parties."

### Recitals

**WHEREAS,** URU is the record owner of 4380 University Parkway, University Heights, Ohio ("Subject Property"); and

**WHEREAS,** since 2009, Denciger has resided at the Subject Property with his family and has exercised his religion there together with others of the Aleksander sect at what has come to be known as the Aleksander Shul (the "Shul"); and

**WHEREAS,** on October 14, 2019, at the City's request, URU submitted an application for a special use permit to operate a Shul ("Application") at the Subject Property; and

**WHEREAS,** the Application was heard at a City Planning Commission meeting on November 21, 2019; and

**WHEREAS,** at the November 21, 2019 meeting the City Planning Commission tabled the Application with URU's consent so that URU could produce as-built drawings of the residential home; and

**WHEREAS,** on June 7, 2021, the City filed a case in the Court of Common Pleas, Cuyahoga County, Ohio, captioned *City of University Heights vs. University Realty USA, LLC*, et al., case no. CV-21-948437 ("State Case") seeking a Temporary Restraining Order and Preliminary and Permanent Injunction against Plaintiffs; and

**WHEREAS,** on June 29, 2021, Plaintiffs and the City stipulated to entry of a Temporary Restraining Order in the State Case pending a hearing on the Preliminary Injunction; and

**WHEREAS,** on July 27, 2021, Plaintiffs and the City stipulated to an Amended and

1

Extended Temporary Restraining Order in the State Case; and

**WHEREAS,** Plaintiffs filed an Answer, Counterclaim and Third-Party Complaint against the Mayor in the State Case on September 14, 2021; and

**WHEREAS,** on October 13, 2021, Plaintiffs filed a Complaint against City in the United States District Court for the Northern District of Ohio captioned *Aleksander Shul, et al., v. City of University Heights, Ohio*, Case no. 1:21-cv-01945 (the "Federal Case"); and

**WHEREAS,** in the Federal Case, Plaintiffs asserted claims against the City for injunctive relief and monetary damages under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc ("RLUIPA"), the Free Exercise Clause of the First Amendment to the U.S. Constitution, and Ohio state law; and

**WHEREAS,** Plaintiffs appeared for a hearing on November 22, 2021 on the Application before the City Planning Commission; and

**WHEREAS,** on November 22, 2021, the City Planning Commission recommended granting Plaintiffs' Application; and

**WHEREAS,** on December 6, 2021, the City approved Plaintiffs' Application subject to Plaintiffs obtaining a Certificate of Occupancy for the Shul and other contingencies recommended by the Planning Commission; and

**WHEREAS,** on March 9, 2022, Plaintiffs and the City stipulated to entry of a Preliminary Injunction in the State Case; and

**WHEREAS**, the City filed an Answer to Plaintiffs' Complaint in the Federal Case on April 18, 2022; and

**WHEREAS**, the Parties desire to resolve the Federal Case without further litigation, controversy, and inconvenience related to the subject matter of the Federal Case, and desire to settle, fully and finally, any and all claims among them; and

**WHEREAS,** the Parties have always desired to live harmoniously together as neighbors; and

**WHEREAS,** the Parties are pleased to resolve past misunderstandings and look

2

forward to continuing to live together as part of one University Heights community; and

**WHEREAS,** the Parties, after an opportunity to consider and to confer with counsel of their choice, have reached a voluntary agreement with respect to the disputed issues, and with a full understanding of the terms of this Agreement, desire to memorialize their settlement herein; and

**NOW, WHEREFORE,** in consideration of the foregoing premises and the releases, terms of settlement, and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

### Terms of Agreement

1. **Settlement Payment.** Within 30 calendar days following entry of the Order attached hereto as **Exhibit A** by the United States District Court for the Northern District of Ohio, Eastern Division, the City will pay to Plaintiffs, in one singular payment, the sum total of $100,000.00 (one hundred thousand dollars) (the "Settlement Payment"). The Settlement Payment will be made through the delivery to Plaintiffs' counsel of a check for $100,000.00 (one hundred thousand dollars) payable to "Storzer & Associates, P.C." as attorneys for Plaintiffs (with an address of 9433 Common Brook Road, Suite 208, Owings Mills, Maryland 21117). Said Settlement Payment shall not include and shall be separate from any provision for payment of Plaintiffs' attorneys' fees, as set forth in Paragraph 15 of this Agreement.

2. **Release of All Claims.**

    a. Upon receipt of the Settlement Payment, and as consideration therefore, and subject to the terms of Paragraphs 2-25 hereof, the Plaintiffs will release, acquit and forever discharge the City and Mayor and all of their respective officers, employees, agents, servants, attorneys, managers, departments, directors, insurers and assigns, both individually and in their official capacities, as well as all such persons' and entities' respective predecessors and successors from all claims and demands, actions,causes of actions, damages, costs, expenses, fees, compensation, and injuries including, but not limited to, all claims which are, or which could have been, assertedin both the State

Case and Federal Case.

b.    The City and Mayor will release, acquit, and forever discharge the Plaintiffs and all of their officers, employees, agents, servants, attorneys, managers, departments, directors, insurers and assigns, both individually and in their official capacities, as well as all such persons' and entities' respective predecessors and successors, from all claims, actions, causes of actions, damages, costs, expenses, fees,compensation, and injuries arising from the State Case and Federal Case.

c.    This Paragraph 2 shall  not prevent any action necessary to enforce the termsof this Settlement Agreement. The Parties agree that these releases shall not include any person(s) or entity that files a "Challenge" as that term is defined in Paragraph 9 below.

3.    **Land Use Terms.** Plaintiffs shall be authorized to operate and use the Subject Property as a House of Worship (the "Intended Use") pursuant to the recommendation of the City Planning Commission on November 22, 2021, and subsequent approval by the City Council, except that the condition requiring that the parking licenses that were submitted to the City remain in place is modified to recognize that such licenses may change from time to time; however, Plaintiffs shall maintain parking licenses sufficient to provide off street parking reasonably necessary to serve the permitted occupancy authorized by the special permit approval. The development, improvement, renovation, and use of the Subject Property for the Intended Use (the "Project") will be consistent with the conditions set forth in the aforementioned approval by the City Council, the fully executed Development Agreement attached as **Exhibit D**, and the approved revisedarchitectural plans attached hereto and made a part hereof as **Exhibit E** (the "Approval"), the latter as discussed below in Paragraph 4.

4.    **Necessary Approvals.** The Parties agree that the architectural plans, building design, and layout as set forth in **Exhibit E** are hereby approved for the Project and that no further special use permit approval, architectural design approval, or other administrative review is necessary for the Project. Plaintiffs shall comply with all building, electrical, sewage, drainage, fire, and safety codes as necessary to authorize permits for construction and issuance of a Certificate of Occupancy (CO) for the Project upon completion of construction. Plaintiffs shall have the  good-faith obligation to promptly present to the City technical plans and/or revised technical plans that comply with applicable building, electrical, sewage, drainage, fire, and safety codes and setback requirements (except to the

extent that any variance has already been granted in connection with the Project) and to attempt in good faith to implement any reasonable comments to said plans offered by the City administration. The City shall have the good-faith obligation to promptly review and/or approve any such plans. Pursuant to the fully executed Development Agreement attached at **Exhibit D** and as provided herein, the City will in good faith, diligently, expeditiously, and with all reasonable speed act to confirm that the technical plans meet the applicable building, electrical, sewage, drainage, fire, and safety codesrequirements necessary for construction to commence and issuance of a CO upon completion of construction of the Project, authorizing the use of the Subject Property as a house of worship at an occupancy limit of 130 or other limit as determined by theCity Building Commissioner, whichever limit is lesser. Unless good cause exists, the City shall schedule inspections, conduct inspections, review plans, issue approvals or specifically identify any areas of noncompliance within fourteen (14) days of each request or submission.

5. **Cooperation.** Contemporaneously with the execution of this Agreement, the parties shall enter into the Development Agreement attached as **Exhibit D** and will provide for the timely review, inspection, and completion of all construction related to the Project. The Parties acknowledge and recognize that there may be a need to revise or amend the Plans or provide non-substantial variances as reasonably necessary to accomplish the intent of this agreement to permit the use of the Subject Property as a house of worship, and the Parties agree to work in good faith to accomplish the same and Planning Commission, Architectural Review Board and Board of Zoning Appeals hearings will not be necessary for approval of such. In addition, the City will process all of Plaintiffs' applications for necessary approvals from the City's issuing authorities required for the construction and operation of the Shul and related site improvements in accordance with applicable federal, state, and municipal law, ordinances, and regulations. In  the event the Parties reach an impasse regarding anyof the permits or approvals necessary as contemplated by Paragraphs 3 and 4, the Parties agree to request a conference with the Court, pursuant to its continuing jurisdiction over this matter as contemplated in Paragraph 10 hereof, for the purpose ofresolving any such impasse. Plaintiffs agree that their failure to satisfy the contingencies in the Approval and the Development Agreement within twenty-four (24) months from approval of the technical plans necessary to begin construction, subject to force

majeure, or unforeseen site or building conditions, will give the City a right to revoke the special use permit and to return the Subject Property to residential use.

6.    **Municipal Court Case.** The City filed the Municipal Case against URU in the Shaker Heights Municipal Court ("Municipal Court") on September 6, 2019, including three counts alleging that URU violated University Heights Codified Ordinances 1420.02 by making improvements to the Subject Property without obtaining a permit (Count One), and 1250.02 and 1274.04 by using the Subject Property as a House of Worship without obtaining a Special Use Permit (Counts Two and Three). On May 12, 2021, URU entered a plea of no contest to all three counts. URU was sentenced by the Municipal Court to fines totaling $1,590,000.00, all of which except $65,000.00 was suspended, and court costs (the "Sentence"). Within ten (10) days of the full execution of this Agreement, URU and the City shall file the following with the Municipal Court: (a) a Joint Motion to Modify Sentence such that all fines ($1,590,000.00, all of which except $65,000.00 was suspended) and court costs ($1,474 as of the date of the execution of this Agreement) shall be deemed satisfied, extinguished, and/or waived; and (b) a Joint Motion to Hold in Abeyance any Ruling on the Joint Motion to Modify Sentence ("Abeyance Motion") which will seek a deferral of any ruling on the Joint Motion to Modify Sentence until such time as a performance bond is posted as contemplated in the Development Agreement attached hereto as **Exhibit D** or, in the alternative and at the Court's discretion, nine (9) months from the date of the execution of this Agreement. The Parties hereby agree that, for purposes of the Joint Motion to Modify Sentence, extraordinary circumstances exist that would nullify or otherwise render imperfect the Eighth District Court of Appeals' mandate that the Municipal Court carry the Sentence into execution. Such extraordinary circumstances include, but are not limited to: (1) the interrelationship between the Municipal Case and the Federal Case; and (2) the terms of this Agreement, including the promises made by URU to bring the subject property in compliance with the applicable codes and remedy the violations upon which the Sentence was based. The parties further agree that due to such extraordinary circumstances, modification of the Sentence is warranted and appropriate. In the event the Municipal Court denies the Abeyance Motion, the City shall take no action to pursue or cause any other person or entity to pursue or encourage collection of the aforementioned fines and court costs and/or execution of the sentence

6

imposing the same. In the event the Municipal Court denies the Joint Motion to Modify Sentence, the parties shall take all necessary actions, including any court filings that may be warranted, to have the Sentence (including all fines and court costs) deemed satisfied, extinguished, and/or waived, such that URU shall not be required to pay such fines or costs.

7.   **Public Statement.** Within fourteen (14) days of the entry of the Order attached hereto as **Exhibit A**, Plaintiffs  at their own expense shall cause to be published a full pagead in the online and print editions of Cleveland Jewish News, with an identical ad posted on localjewishnews.com containing the statement set forth in **Exhibit F** to this Agreement.

8.   **Continuing Obligations.** Once the performance of all actions and obligations contemplated by Paragraphs 1-7 of this Agreement have been completed, the Parties shall continue to act in good faith at all times in the future concerning any regulation or enforcement action, proceeding, or conduct concerning the Project, and shall abide by applicable local, state, and federal law with respect to the same. Any litigation arising out of this Paragraph 8 shall be filed in the United States District Court for the Northern District of Ohio, Eastern Division, and the Parties consent to the jurisdictionof that court for purposes of the same.

9.   **Legal Challenges to this Agreement.** In the  event  of any  direct  or  collateral legal challenges to, appeals from, or other litigation filed by third parties in any forumarising from this Agreement (collectively "Challenges"), the City will oppose any such Challenge, and shall vigorously defend this Agreement. The City will promptly seek removal of any such Challenge to federal court, if possible based on the claims asserted, and seek to have any such Challenge or appeals heard in the United States District Court for the Northern District of Ohio, Eastern Division. The City will not oppose any Plaintiffs' application to intervene in any such Challenge. Each party shallbear its own fees and costs associated with any Challenge or appeal, or any other litigation arising from this Agreement.

10.   **Enforcement By Judicial Order, Jurisdiction Retained, and Removal.** The Parties agree to jointly request through the proposed Order set forth at **Exhibit A** that the Court enter an Order (1) incorporating the  terms of this Agreement and renderingsuch terms fully enforceable as an order of  this  Court;  and  (2)  retaining jurisdiction  over  the

parties' Settlement Agreement until a Certificate of Occupancy for the Project is issued for its Intended Use. For the avoidance of doubt, the Court's retention of jurisdiction over this Settlement Agreement encompasses all matters relating to any approvals referenced in Paragraph 4, any legal appeals or Challenges referenced in Paragraph 9 or any other matters relating to this Settlement Agreement or the approval or construction of the Shul on the Subject Property. The Court's retention of jurisdiction over this matter does not encompass the City's continuing obligations as set forth under Paragraph 8. The Parties agree that any Complaint or pleadings filed in any Division or Venue of the Court of Common Pleas of Ohio shall be promptly removed, if possible, by the City to the United States District Court for the Northern District of Ohio, Eastern Division, and marked as a related matter to the Federal Case. All Parties consent to such removal and all further proceedings on any such pleadings shall be in the United States District Court for the Northern District of Ohio, Eastern Division.

11.   **Effective Date.** The Effective Date of this Agreement will be the day on which duly-authorized representatives of the Plaintiffs, the City, and the Mayor have executed the applicable signature pages to this Agreement.

12.   **Dismissal of the Case.** Within five (5) business days of the completion of the project pursuant to the Development Agreement set forth at **Exhibit D**, the City shall file the Joint Stipulation of Dismissal, attached as **Exhibit B** to this Agreement, dismissing with prejudice all of the claims in the Federal Case. Contemporaneous with the execution of this Settlement Agreement, Plaintiffs will deliver to counsel for the Mayor and the City a signed copy of the Stipulation of Dismissal, which shall be held in escrow by counsel and not released or used for any purpose until payment of the Settlement Payment has occurred. If payment of the Settlement Payment does not occur, the Stipulation of Dismissal will be void and of no effect.

13.   **Pre-Construction Meeting.** Prior to the performance of any demolition work on the Subject Property, the Developer agrees to schedule and conduct a meeting with neighboring property owners to describe the demolition and construction operations and schedule, and to answer questions the neighboring property owners may have regarding the same. The Developer agrees to provide written notice of such meeting to any property owner whose property is located within 500 feet of the Subject Property

(regardless of the municipality in which such neighboring property is located.) The City agrees to assist Developer with the provision of  notice  if requested, and the City further agrees to make its public meeting spaces available for such a meeting.

14.     **Dismissal of State Case.** The City further agrees to dismiss with prejudice and waive any and all causes of action and claims for relief in the State Case and Plaintiffs shall dismiss with prejudice the Counterclaim and Third Party Complaint in the State Case upon receipt of the Settlement Payment referenced in Paragraph 1 herein. The Plaintiffs shall file the Joint Stipulation of Dismissal, attached as **Exhibit C** to this Agreement, dismissing with prejudice all claims of the Parties in the State Case.

15.     **Prevailing Party Status/Attorneys' Fees.** The Plaintiffs shall be deemed to be the prevailing parties in the Federal Case solely for purposes of a determination of an award of attorneys' fees. The Parties further agree that the Plaintiffs shall be entitledto an award of attorneys' fees, and that the amount of said award of attorneys' feesand costs shall be determined by the United States District Court for the Northern District of Ohio, Eastern Division, upon application of Plaintiffs for same which shall be made within twenty-one (21) days of the entry of the Order attached hereto as **Exhibit A**, with response made twenty-one (21) days later, and reply made ten (10) days  later followed by hearing and oral argument at the discretion of the Court. The Parties agree to be bound by the determination of the Court as to the amount of the award of attorneys' fees and costs and the Parties shall be precluded from challenging or appealing said determination. City/Mayor are responsible for their own attorneys' fees, expert witness fees and costs, and the City/Mayor waive their right to seek any attorneys' fees, expert witness fees, and costs in connection with any actions, causes of action, claims, suits, charges, complaints, liabilities, agreements, controversies, damages, and all other claims, known or unknown, arising out of the facts and legal contentions of the Federal, State, and Municipal Cases. In the event either party must take legal action  to enforce the terms of this Settlement Agreement, each party shall be responsible for its own attorneys' fees and costs but may seek, pursuant to any applicable statute or court rule, recovery of their reasonable attorneys' fees and costs, with the Parties  reserving all arguments concerning the reasonableness and recoveryof fees for presentation in the Federal Case.

16. **Claims Not Assigned.** Each of the Parties acknowledges, represents, and warrants that they have not assigned, sold, or transferred any part of any of the claims or other matters that are being released herein by them.

17. **Independent Judgment and No Other Promises.** The Parties, and each of them, represent and warrant that: (a) other than as specifically set forth in this Agreement, this Agreement is executed without any reliance upon any statement, representation, promise, inducement, understanding, or agreement by or on behalf of any Party or by or on behalf of any employee, representative, agent, or attorney employed by any Party; and (b) no promise, inducement, understanding, or agreementnot expressed herein has been made to any Party.

18. **Authority to Enter Agreement.** Each Party to this Agreement represents and warrants that it, he, or she is duly authorized to enter into this Agreement and the signatory below executing this Agreement on each such Party's behalf, has the authority to sign on behalf of such person or entity. In the event that any judicial, legislative, or other federal, state, or municipal entity of competent jurisdiction finds or holds that any of the Parties entered into this Agreement without proper authority, capacity, or subject to any disqualifying conflicts of interest, that Party will take all necessary steps to cure such defect and ratify the execution of this Agreement and all actions taken pursuant to it on behalf of that Party.

19. **Agreement Jointly Prepared.** This Agreement, including any uncertainty or ambiguity herein, shall not be construed against any one Party, but shall be construed as if all the Parties jointly prepared this Agreement.

20. **Separate and Divisible Terms.** The terms and provisions of this Agreement are intended to be separate and divisible provisions and if, for any reason, any one or more of them is held to be invalid or unenforceable, and neither the validity nor the enforceability of any other provision of this Agreement shall thereby be affected. If, for any reason, any court of competent jurisdiction shall find any provisions of this Agreement to be unlawful, the Parties agree that the restrictions and prohibitions contained herein shall be effective to the fullest extent allowed by law.

21. **Entire Agreement and Modifications.** This Agreement contains the entirety of the Parties' agreement on the terms addressed herein. Modifications of this Agreement must

be in writing and will be effective upon the written consent of all the Parties or counsel acting on their behalf. No oral modification of any term of this Agreement shall be effective for any purpose.

22. **No Waiver and Cure Period.** No waiver of any provision herein shall be binding unless in writing and signed by the person or entity against whom the waiver is asserted. No waiver of any breach of any term or provision of this Agreement shall beconstrued to be, nor shall it be a waiver of any other breach of this Agreement. Any Party's failure to comply with any time limit set forth in this Agreement shall constitute a breach of this Agreement only after the noncomplying party fails to cure such non-compliance within five (5) business days of the relevant deadline.

23. **Notice and Submissions.** Any notice required under or regarding this Agreement shall be sent by overnight delivery or courier service, as well as email. Notices to Plaintiffs shall be sent to the following physical and email addresses:

>Roman P. Storzer. Esq.
>Eric W. Treene, Esq.
>Samuel L. Speed, Esq.
>Storzer & Associates, P.C.
>1025 Connecticut Avenue,
>N.W. Washington, D.C. 20036
>storzer@storzerlaw.com
>treene@storzerlaw.com
>speed@storzerlaw.com
>
>John P. Slagter
>Lindsey E. Sacher
>Tucker Ellis LLP
>950 Main Avenue, Ste. 1100
>Cleveland, Ohio 44113
>john.slagter@tuckerellis.com
>lindsey.sacher@tuckerellis.com

Notices to City and the Mayor shall be sent to the following physical and email addresses:

>Luke F. McConville (0067222)
>Michael E. Cicero (0058610)
>Nicola, Gudbranson & Cooper, LLC
>1400 Republic Building
>25 W. Prospect Avenue
>Cleveland, Ohio 44115

11

Tel: (216) 621-7227
Fax: (216) 621-3999
mcconville@nicola.com
cicero@nicola.com

Mark Landes (0027227)
Donald C. Brey (0021965)
Isaac Wiles & Burkholder, LLC
Two Miranova Place, Ste.700
700 Columbus, Ohio 43215-5098
Tel: (614) 221-2121
Fax: (614) 365-9516
mlandes@isaacwiles.com
dbrey@isaacwiles.com

24. **Governing Law and Forum.** This Agreement shall be deemed to have been executed within the State of Ohio, and the Parties' rights and obligations hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of Ohio without regard to rules regarding choice of laws, except to the extent that federal law applies to questions regarding the Court's continuing jurisdiction in this matter or special federal common law preempts any application of state law with respect to interpretation or application of this Agreement. The United States District Court for the Northern District of Ohio, Eastern Division, shall retain jurisdiction to enforce the terms of this Agreement as per Paragraph 10 herein and the Parties consent to removal of all claims arising hereunder as per Paragraph 10 of this Agreement. Notwithstanding anything to the contrary in this Agreement, federal law, including but not limited to RLUIPA, governs all substantive claims giving rise to the Federal Case and this Agreement.

25. **Execution in Counterparts.** This Agreement may be executed in one or more counterparts. The signature pages of the various counterparts may be collected with one copy of the balance of this Agreement, which, together with collected and signed signature pages, shall constitute a true and correct copy of this Agreement. Photocopies or electronic scans of this Agreement (including signature pages) may be used in place of originals for any and all purposes.

**ALL OF THE ABOVE IS AGREED AND ACCEPTED** and is effective as of the Effective Date.

**University Realty USA, LLC**

Shnior Zalman Denciger, Authorized Agent of the LLC

Dated: 12,23. 2022

**Rabbi Shnior Zalman Denciger**

Dated: 12.23.2022

**Aleksander Shul**

By: Shnior Zalman Denciger, Aleksander Shul President

Dated: 12.23.2022

**City of University Heights, Ohio**

Michael Dylan Brennan, Mayor of University Heights

Dated: _____

**Michael Dylan Brennan**

Dated: _____

13

**University Realty USA, LLC**

_____
Shnior Zalman Denciger, Authorized Agent of the LLC

Dated: _____

**Rabbi Shnior Zalman Denciger**

_____

Dated: _____

**Aleksander Shul**

_____
By: Shnior Zalman Denciger, Aleksander Shul President

Dated: _____

**City of University Heights, Ohio**

_____, MAYOR
Michael Dylan Brennan, Mayor of University Heights

Dated: December 22, 2022

**Michael Dylan Brennan**

_____

Dated: December 22, 2022

13

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEKSANDER SHUL, et al., | ) | CASE NO. 1:21-CV-01945 |
| | ) | |
| Plaintiffs, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE JENNIFER |
| | ) | DOWDELL ARMSTRONG |
| CITY OF UNIVERSITY HEIGHTS, OHIO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

**THIS MATTER** having been brought before the Court by Plaintiffs, the Aleksander Shul,

Shnior Zalman Denciger, and University Realty  USA  LLC,  pursuant to the provisions of the

Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc,

et seq., the United States Constitution, and the laws of the State of Ohio, to use certain real property

located at 4380 University Heights (the "Subject Property") as a Shul by Complaint dated October

13, 2021; and

**WHEREAS**, the City filed an Answer to Plaintiffs' Complaint in the Federal Action on

April 18, 2022; and

**WHEREAS**, all Parties desire to resolve the above-captioned action without further

litigation, controversy, and  inconvenience related to the subject matter of the action, and desire to

settle, fully and finally, any and all claims among them; and

**WHEREAS**,  the Parties have submitted a fully executed Settlement Agreement for the

1

Court's review; and

**WHEREAS,** the Court has reviewed the Parties' Settlement Agreement and finds it tobe fair and reasonable; and

**WHEREAS**, this Court has jurisdiction over the subject matter of this case pursuant to28 U.S.C. § 1331, 28 U.S.C. § 1367, and 42 U.S.C. § 2000cc-2; and

**WHEREAS**, this Court has personal jurisdiction over City; and venue is proper inthis District;

**IT IS** on this_____day of_____, 2022, **ORDERED, ADJUDGED and DECREED** as follows:

1. The terms of the Parties' Settlement Agreement, dated _____, 2022 and attached to this Order, and each of those terms and Exhibits attached thereto are hereby incorporated into this order and are fully enforceable as an order of this Court.

2. This Court shall retain jurisdiction to enforce the terms and conditions of the Settlement Agreement for the term set forth in the Settlement Agreement.

**IT IS SO ORDERED.**

Dated:_____, 2022

_____
Hon. J. Philip Calabrese
United States District JudgeNorthern District of Ohio

2

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEKSANDER SHUL, et al., | ) | CASE NO. 1:21-CV-01945 |
| | ) | |
| Plaintiffs, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE JENNIFER |
| | ) | DOWDELL ARMSTRONG |
| CITY OF UNIVERSITY HEIGHTS, OHIO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLEASE TAKE NOTICE THAT,** pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, Plaintiffs and Defendants, by and through their undersigned attorneys, hereby give notice that the above-captioned Case is voluntarily dismissed, with prejudice.

Date: _____

**STORZER & ASSOCIATES, P.C.**


_____
Roman P. Storzer, Esq., *pro hac vice*
Eric W. Treene, Esq., *pro hac vice*
Samuel L. Speed, Esq. *pro hac vice*
1025 Connecticut Avenue, N.W
Washington, DC 20036
Tel: (202) 857-9766
Fax: (202) 315- 3996
storzer@storzerlaw.com
treene@storzerlaw.com
speed@storzerlaw.com

1

**TUCKER ELLIS LLP**

_____
John P. Slagter (0055513)
Lindsey E. Sacher (0087883)
Anthony Vacanti (0080834)
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel: (216) 696-5863
john.slagter@tuckerellis.com
lindsey.sacher@tuckerellis.com
tony.vacanti@tuckerellis.com

_Attorneys for Plaintiffs_


**ISAAC WILES & BURKHOLDER, LLC**

_____
Mark Landes (0027227)
Donald C. Brey (0021965)
Two Miranova Place, Suite 700
Columbus, Ohio 43215-5098
Tel: (614) 221-2121
Fax: (614) 365-9516
mlandes@isaacwiles.com
dbrey@isaacwiles.com

_Attorneys for Defendant_

**EXHIBIT C**

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF UNIVERSITY HEIGHTS, | ) | CASE NO. CV-21-948437 |
| | ) | |
| Plaintiff/Counterclaim | ) | JUDGE JOAN SYNENBERG |
| Defendant, | ) | |
| | ) | MAGISTRATE STEPHEN M. BUCHA |
| v. | ) | |
| | ) | |
| UNIVERSITY REALTY USA, LLC, et al., | ) | |
| | ) | |
| Defendants/Counterclaim | ) | |
| Plaintiffs/Third-Party Plaintiffs | ) | **NOTICE OF DISMISSAL WITH** |
| | ) | **PREJUDICE** |
| v. | ) | |
| | ) | |
| MICHAEL DYLAN BRENNAN, | ) | |
| | ) | |
| Third-Party Defendant | ) | |
| . | ) | |

**PLEASE TAKE NOTICE THAT,** pursuant to Rule 41(A)(1)(b) of the Ohio Rules of

Civil Procedure, the Parties, by and through their undersigned attorneys, hereby give notice that

the above-captioned Case is voluntarily dismissed, with prejudice.


Date: _____


**NICOLA, GUDBRANSON & COOPER, LLC**


_____
Luke F. McConville
Michael E. Cicero
25 W. Prospect Avenue,
Cleveland, Ohio 44115
Tel: (216) 621-7227
Fax: (216) 621-3999

*Attorneys for Plaintiff/Counterclaim Defendant*

1

**ISAAC WILES & BURKHOLDER, LLC**

_____
Mark Landes (0027227)
Two Miranova Place,
Suite 700
Columbus, Ohio 43215-5098
Tel: (614) 221-2121
Fax: (614) 365-9516

_Attorneys for Third Party Defendant, Michael Dylan Brennan_

**STORZER & ASSOCIATES, P.C.**

_____
Roman P. Storzer, _pro hac vice_
Samuel L. Speed, _pro hac vice_
1025 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 857-9766
Fax: (202) 315-3996

_Attorneys for Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs_

**TUCKER ELLIS LLP**

_____
John P. Slagter
Lindsey E. Sacher
Anthony Vacanti
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel: (216) 696-5863
Fax: (216) 621-3999

_Attorneys for Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs_

**EXHIBIT D**

**DEVELOPMENT AGREEMENT**

This DEVELOPMENT AGREEMENT (the "Agreement") is made this 23rd day of December 2022 and entered into by and between the City of University Heights, Ohio (the "City"), an Ohio municipal corporation having a mailing address at 2300 Warrensville Center Road, University Heights, Ohio 44118 and University Realty USA, LLC, an Ohio limited liability company ("URU"), and the Aleksander Shul (collectively, with URU, the "Developer"), having a mailing address at 4380 University Parkway, University Heights, Ohio 44118.

**WHEREAS**, URU is the owner of real property and improvements located at 4380 University Parkway, University Heights, Ohio (PPN 721-20-053) (the "Property");

**WHEREAS**, the Developer intends to construct improvements upon the Property, including construction of an addition to the structure and improvements to the existing building to bring it into compliance with the Ohio Building Code for assembly use and to better accommodate the use of the Property as a house of worship (the "Project");

**WHEREAS**, the Developer obtained Planning Commission approval for the Project, and a Special Use Permit for use of the Property for assembly as a house of worship, based upon certain conditions including the requirement that the parties enter into this Agreement;

**WHEREAS**, the Developer and the City (collectively, the "Parties") have entered into a settlement agreement (the "Settlement Agreement") contemporaneously herewith, which Settlement Agreement provides for approval of an alternate building and development Plan for the Property consistent with the proposed modified plan attached hereto and made a part hereof as **Development Agreement Exhibits A and B**; and

**WHEREAS**, the parties desire to enter into this Development Agreement in order to set forth the respective rights, agreements and obligations of the parties as more specifically provided herein.

**NOW THEREFORE**, for good and valid consideration, the receipt and sufficiency of which are acknowledged by the Parties, the Parties now agree as follows.

1.      <u>Construction of Development Improvements</u>. Developer intends to construct an addition to the Property and to make such other improvements as are necessary to cause the Property to be in compliance with the Ohio Building Code for assembly use. The Project shall be completed in a good and workmanlike manner and, where necessary, in accordance with the plans and specifications which have been approved by the City pursuant to the Settlement Agreement, a copy of which are

1

attached hereto as **Development Agreement Exhibit A and B**. All applications for permits in furtherance thereof shall be submitted in accordance with applicable laws, rules, regulations, codes and ordinances. Such permits necessary for the Project or any portionthereof shall be issued by the City as soon as practicable after application for such permits and any approval by the City shall not be unreasonably withheld or delayed. The City shall review and approve all technical plans within fourteen (14) days of submittal and to the extent any issues of non-compliance are identified the City shall detail such issues so that they are clearly known and revised technical plans may be submitted.

2.      Timing of Completion of Project. Completion of construction of the Project, including, but not limited to, any construction or improvements necessary to comply with the Ohio Building Code for assembly use, shall occur within twenty-four (24) months from approval of the technical plans necessary to begin  constructionsubject to force majeure, unforeseen site or building conditions, and other permissible delays as described herein (the "Project Completion Deadline"). The Developer shall cause the technical plans to be submitted to the City for review and approval no later than six (6) months after the complete execution of this Agreement. For purposes of this Agreement, the Project shall be considered to be complete when the City Building Department issues a Certificate of Occupancy permitting occupancy of Property for assembly use as a house of worship, the issuance of which shall not be unreasonably withheld, conditioned or delayed.

3.      Pre-Construction Meetings. Prior to the performance of any construction work on the Property, the Developer agrees to conduct a meeting with the City Building Department and Engineer, to provide information about the Developer's activities and schedule.

4.      Performance Bond. Prior to commencement of any Project demolition or construction and prior to issuance of any permits, the Developer or the Developer's designee shall first provide a financial guarantee of performance to the Finance Director of the City in the form of a performance bond or other adequate security in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00). Such bond shall be promptly released by the City upon the City's issuance of a Certificate of Occupancy for the house of worship, which Certificate of Occupancy shall not be unreasonably withheld, conditioned, or delayed provided the Project is constructed in accordance with the approved technical plans. The performance bond or other adequate security shall, by its terms, allow the City to draw upon the bond to the extent and in the event that the Developer abandons the Project, declares bankruptcy or otherwise is insolvent, or fails to meet the Project Completion Deadline in an amount necessary to complete the Project, including securing of the site.

5.      Conditions to Issuance of Construction Permits. Prior to the issuance of permits, the Developer must submit technical plans for and obtain administrative approval from the City's Engineer and/or Building Department and/or Fire Department (as applicable) in connection with the architect's drawings and/or technical plans and specifications for the Project.

6.  <u>Restoration/Removal</u>. Upon completion of the Project, the Developer shall repair and restore any damage caused to any City property or to any adjoining homeowners' property as a result of Developer's performance of work. The lawn shall be re-seeded in the drive apron areas. Developer shall not remove any tree from the right-of-way prior to providing written notice to the City and obtaining permission for such tree removal, which approval will not be unreasonably withheld, conditioned or delayed. Developer shall replace any tree so removed with a newly planted tree as a condition of receiving a Certificate of Occupancy.

7.  <u>Indemnification and Insurance</u>. The Developer agrees to indemnify and hold the City harmless from and against and to the extent of any damages, liabilities, claims, costs, charges, and expenses arising out of the Developer's construction of the Project in a negligent or improper manner. During construction and until completion of the Project, the Developer shall provide the City with evidence of commercial general liability insurance through an insurer that is acceptable to the City with minimum limits of Two Million Dollars ($2,000,000.00) per occurrence, and with coverage that protects the City from liability arising out of Developer's construction of the Project.

8.  <u>Vacation of Property.</u> Prior to commencement of construction, Developer shall cause the termination of any residential tenancies or occupancies of the Property, and Developer agrees that the Property shall be used for assembly as a house ofworship.

9.  <u>Waste Receptacle</u>. Developer shall comply with UHCO Section 1274.03(g) for waste receptacles on site, which section states: "Waste receptacles shall be screened from view on all sides by building walls and by supplemental opaque fences, walls or landscaping having a minimum height of six feet." Plans submitted by the Developer for approval by the City Building Department shall depict the location and dimensions of such structure. The Developer shall make arrangements for removal of garbage on site on a weekly basis by a commercial refuse removal vendor for purposes of maintaining the Property in a safe and healthy manner.

10.  <u>Inspections</u>. Developer shall contact the City Building Department to schedule pre-construction and post-construction inspections, as necessary, in connection with any work on the Property, so that the City may verify that construction performed on the Property is in compliance with applicable building codes, and the City shall timely and without delay confirm compliance with applicable building codes following any such inspection.

11.  <u>Parking</u>. Upon execution of this Agreement, Developer shall usereasonable efforts to notify congregants of the Aleksander Shul to utilize parkinglicenses for parking and to discourage said congregants from parking in the public right-of-way on either University Parkway or Milton Road, except for reasonable use ofsuch public streets as determined by the City's safety forces.

3

12.     Fire Department Inspection. Following the construction of the project, the Developer shall permit the University Heights Fire Department/Fire Prevention Bureau to access the Property in order to inspect any fire prevention systems and fire code requirements for the assembly use as a house of worship. The Developer further acknowledges and agrees that so long as the Property is used for an assembly use as a house of worship, it shall be subject to an annual inspection conducted by the City Fire Department/Fire Prevention Bureau.

13.     Breach of Contract. Except as otherwise provided in this Agreement, in the event of any default or breach of any of the terms or agreements herein contained, by any Party hereto, such Party shall, upon written notice to the other Parties, proceed to cure or remedy such default or breach within thirty (30) days after receipt of such notice, or, in the event the default or breach does not involve the payment of money or cannot be cured within thirty (30) days, then such longer period of time as may be reasonable. In the event the default or breach is not cured within the time periods set forth in this paragraph, then the aggrieved party may institute such proceedings consistent with Section 18 of this Agreement and the Settlement Agreement as may be necessary in its opinion to cure and remedy such default or breach, including, but not limited to, proceedings to compel specific performance or to obtain amounts available under the performance bond to complete construction of the Project, or otherwise.

14.     Assignment. Neither party may assign this Agreement.

15.     Termination of Agreement. Upon completion of the Project and issuance of the Certificate of Occupancy by the City, the Parties agree to execute, in recordable form if requested by any Party, a statement confirming the termination of this Agreement.

16.     Severability. The Parties agree that if any court or tribunal of competent jurisdiction determines that any provision of this Agreement is illegal, invalid or unenforceable, the remainder of this Agreement shall not be affected thereby.

17.     Counterparts. This Agreement may be signed in counterparts and on separate signature pages. These separate executed pages will become part of the same integrated Agreement.

18.     Governing Law and Forum. This Agreement is governed by and shall be interpreted according to Ohio law. The parties hereto consent to the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division, for resolution of any disputes arising from this Agreement.

19.     Waiver. The failure of a Party to insist, in any one or more instances, upon a strict performance of any of the terms and conditions of this Agreement, or to exercise or fail to exercise any option or right contained herein, shall not be construed as a waiver or a relinquishment for the future of such right or option, but the same shall continue and remain in full force and effect. The continued performance by a Party of this Agreement with knowledge of the breach of any terms or conditions hereof shall not be deemed a waiver of such breach, and no waiver by any Party of any provision

4

hereof, shall be deemed to have been made, or operate as an estoppel, unless expressed in writing and signed by such Party.

    **20.**   Notices. All notices herein authorized or required to be given shall be given to the Party at the address set forth in the initial paragraph of this Agreement. Additional notices shall be sent as follows:

| | |
|---|---|
| To City: | City Hall |
| | 2300 Warrensville Center Road |
| | University Heights, Ohio 44118 |
| | Attn: Mayor |
| | |
| With a copy to: | Luke F. McConville, Esq. |
| | Nicola, Gudbranson & Cooper, LLC |
| | Republic Building, Ste. 1400 |
| | 25 West Prospect Avenue |
| | Cleveland, OH 44115 |
| | |
| To Developer: | John Slagter, Esq. |
| | Tucker Ellis LLP |
| | 950 Main Avenue |
| | Suite 1100 |
| | Cleveland, OH 44113 |

    **21.**   Headings. The headings in this Development Agreement are for the purposes of reference only and shall not affect or define the meanings hereof.

    **22.**   Survival. The Parties hereto agree that Sections 6, 7, 8, 9, 10, 11, and 12 shall remain in full force and effect and shall survive the termination or expiration of this Agreement.

    **23.**   Equitable Relief. Each Party acknowledges that its breach or threatened breach of its obligations under this Agreement will result in irreparable harm to theother Parties that cannot be adequately relieved by money damages alone. Accordingly, the Parties hereby acknowledge their mutual intent that after any breach of the terms or obligations set forth in this Agreement, the non-breaching Party may seek equitable relief from a court of competent jurisdiction, including injunctive relief, without the need for that party to post any security or bond.

    **24.**   Complete Agreement. This Agreement sets forth the complete understanding between the Parties and supersedes and replaces all prior understandings and agreements (both oral and written) other than the Settlement Agreement and may not be changed except in a written Agreement signed by all Parties.

IN WITNESS WHEREOF, the parties hereto have set their hands this 22ᴺᴰ day of December 2022:


CITY OF UNIVERSITY HEIGHTS, OHIO

By: _____
Mayor Michael Dylan Brennan


UNIVERSITY REALTY USA, LLC


By: _____
Shnior Zalman Denciger, Authorized Agent of the LLC


ALEKSANDER SHUL


By: _____
Shnior Zalman Denciger, Aleksander Shul President

6

IN WITNESS WHEREOF, the parties hereto have set their hands this 23rd day of December 2022:

CITY OF UNIVERSITY HEIGHTS, OHIO

By: _____
Mayor Michael Dylan Brennan

UNIVERSITY REALTY USA, LLC

By: _____
Shnior Zalman Denciger, Authorized Agent of the LLC

ALEKSANDER SHUL

By: _____
Shnior Zalman Denciger, Aleksander Shul President

6

**Development Agreement Exhibit A (1of 2)**



**Development Agreement Exhibit A (2 of 2)**



**Development Agreement Exhibit B (1 of 1)**



**EXHIBIT E**

**APPROVED REVISED ARCHITECTURAL PLANS**





## EXHIBIT F

## PUBLIC STATEMENT OF THE PARTIES

**The Aleksander Shul is pleased to report that it has reached an agreement with the City of University Heights regarding its operation of a shul at 4380 University Parkway in University Heights. This agreement resolves all of Aleksander Shul's lawsuits against the City, and will permit the development of a shul on the property.**

**The Aleksander Shul wishes to thank Mayor Michael Dylan Brennan and the City of University Heights for finding a solution that both accommodates the religious needs of the Chassidic Jewish community and protects the zoning interests of the City and all of its residents.**

**We have always desired to live harmoniously together as neighbors, and look forward to working together in partnership.**

**Sincerely,**

[signed with signature printed in the ad]

**Rabbi Shnior Zalman Denciger**

1