IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALEKSANDER SHUL, SHNIOR ZALMAN DENCIGER, and UNIVERSITY REALTY USA LLC<br><br>　　Plaintiffs,<br><br>v.<br><br>CITY OF UNIVERSITY HEIGHTS,<br><br>　　Defendant. | Case No. 1:21-CV-01945-JPC |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

**TUCKER ELLIS LLP**

John P. Slagter (0055513)
Lindsey E. Sacher (0087889)
Anthony Vacanti (0080834)
950 Main Ave Suite 1100
Cleveland, OH 44113
Tel: (216) 696-5863
john.slagter@tuckerellis.com
lindsey.sacher@tuckerellis.com
tony.vacanti@tuckerellis.com

**STORZER & ASSOCIATES, P.C.**

Roman P. Storzer, Esq., *pro hac vice*
Eric W. Treene, Esq., *pro hac vice*
Samuel L. Speed, Esq*.*, *pro hac vice*
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036
Tel: (202) 857-9766
Fax: (202) 315-3996
storzer@storzerlaw.com
treene@storzerlaw.com
speed@storzerlaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

FACTUAL AND PROCEDURAL OVERVIEW ......................................................................1

    I.    PARTIES AND ENFORCEMENT ACTION. ...............................................................1

        A.    The Aleksander Community in University Heights.................................................1

        B.    The City's Targeting of the Plaintiffs and the Orthodox Jewish Community. ........1

    II.    THIS LAWSUIT...........................................................................................................2

    III.    THE SETTLEMENT. ..................................................................................................3

ARGUMENT.................................................................................................................................3

    I.    PLAINTIFFS ARE PREVAILING PARTIES AND ARE ENTITLED TO AN AWARD OF ATTORNEY'S FEES. ................................................................................3

    II.    THE NUMBER OF ATTORNEY HOURS AND THE HOURLY RATES ARE REASONABLE. ..........................................................................................................4

        A.    The Lodestar Method................................................................................................4

        B.    Counsel's Rates are Reasonable. .............................................................................5

        C.    Plaintiffs' Attorney Hours Were Necessary and Reasonable to Successfully Prosecute this Action. .............................................................................................6

        D.    The Hours Spent Litigating this Matter were Reasonable. ...................................12

            1.    Counsel worked diligently to obtain excellent results. .............................12

            2.    Plaintiffs are entitled to an award of fees for attorney time consumed presenting this motion. .............................................................................13

    III.    PLAINTIFFS ARE ENTITLED TO COSTS UNDER 28 U.S.C. § 1920. .......................13

CONCLUSION............................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) ........................ 7, 10

*Barrow v. City of Cleveland,* No. 1: 16CV923, 2018 WL 3105110 (N.D. Ohio June 25, 2018), *aff'd,* 773 F. App'x 254 (6th Cir. 2019) ............................................................................... 5, 11

*BDT Prods., Inc. v. Lexmark Int'l, Inc.,* 405 F.3d 415 (6th Cir. 2005) ......................................... 14

*Bensalem Masjid, Inc. v. Bensalem Twp., Pennsylvania*, No. CV 14-6955, 2022 WL 1488439 (E.D. Pa. May 11, 2022) ............................................................................................................. 9

*Bethel World Outreach v. Montgomery Cnty.*, 706 F.3d 548 (4th Cir. 2013) ................................ 8

*Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608 (6th Cir. 2013) ....................................................... 4

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.,* 532 U.S. 598 (2001) ......................................................................................................................................... 4

*Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona, NY,* 945 F.3d 83 (2d Cir. 2019) .................................................................................................................................. 8

*Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004) ......................................................................... 5

*Gonter v. Hunt Valve Co.,* 510 F.3d 610 (6th Cir. 2007) ............................................................... 5

*Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) ................................................ 4

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................. 12

*Hunt Valley Baptist Church, Inc. v. Baltimore Cnty., Maryland*, No. CV SAG-17-0804, 2020 WL 618662 (D. Md. Feb. 10, 2020) ........................................................................................... 9

*Jesus Christ Is The Answer v. Baltimore Cnty.*, Md, 915 F.3d 256 (4th Cir. 2019) ....................... 8

*Miller v. Caudill,* 936 F.3d 442 (6th Cir. 2019) ............................................................................ 3

*Missouri v. Jenkins by Agyei,* 491 U.S. 274 (1989) ...................................................................... 4

*NOCO Co. v. Mac Calabur Invs., LLC*, No. 1:21-CV-2173, 2022 WL 2870900 (N.D. Ohio July 21, 2022) .................................................................................................................................... 6

*Noco Co. v. Valenzuela*, No. 1:19-CV-1276, 2021 WL 3725660 (N.D. Ohio Aug. 23, 2021) ...... 6

*Omar Islamic Ctr. Inc. v. City of Meriden*, No. 3:19-CV-00488 (SVN), 2022 WL 4599150 (D. Conn. Sept. 30, 2022) ................................................................................................................. 9

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999) ............................................................................... 7

*Renouf v. Aegis Relocation Co. Corp.*, No. 5:22-CV-497, 2022 WL 16963838 (N.D. Ohio Nov. 15, 2022) .................................................................................................................................... 6

*Rohrer Corp. v. Dane Elec.*, No. 1:10-CV-958, 2012 WL 3648904 (N.D. Ohio Aug. 23, 2012) 12

*Singleton v. Smith*, 241 F. 3d 534 (6th Cir. 2001) .......................................................................... 13

*Spirit of Aloha Temple v. County of Maui,* 49 F.4th 1180 (9th Cir. 2022) ...................................... 8

*Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, 980 F.3d 821 (11th Cir. 2020)........................................................................................................................................ 8

*The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016) ....................... 5, 13

*Truex v. Drivers Direct, LLC*, 583 F. Supp. 3d 1033 (N.D. Ohio 2022) .............................. 4, 5, 11

*Webb v. Bd. of Educ. of Dyer Cnty., Tenn.,* 471 U.S. 234 (1985) ................................................. 13

*WHG TM Corp. v. Patel,* No. 5:07 CV 3087, 2008 WL 495794 (N.D. Ohio Feb. 22, 2008) ........ 6

*White & White, Inc. v. American Hosp. Supply Corp.,* 786 F.2d 728 (6th Cir. 1986).................. 13

**Statutes**

28 U.S.C. § 1920.............................................................................................................................. 13

42 U.S.C. § 1983................................................................................................................................ 2

42 U.S.C. § 1988................................................................................................................................ 3

42 U.S.C. §§ 2000cc, *et seq.* ............................................................................................................ 2

**Other Authorities**

10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2679 (3d ed. 1998)................ 14

146 Cong. Rec. S7774 (July 27, 2000) .......................................................................................... 10

**Rules**

Federal Rule of Civil Procedure 54(d)........................................................................................... 13

**FACTUAL AND PROCEDURAL OVERVIEW**

I. **PARTIES AND ENFORCEMENT ACTION.**

    A. <u>The Aleksander Community in University Heights.</u>

The Plaintiffs Rabbi Shnior Zalman Denciger, the Aleksander Shul, and University Realty USA LLC ("Plaintiffs"), are part of the community of adherents of the Aleksander sect of Orthodox Judaism located in and around the City of University Heights, Ohio ("City"). Since 2009, Rabbi Denciger has used his residence at 4380 University Parkway, University Heights, Ohio ("Property") for religious worship and has invited other members to take part because gathering together is an integral part of religious worship for the Aleksander sect. (ECF No. 1 at 5-6.) This community came to be organized as the Aleksander Shul ("Shul").

    B. <u>The City's Targeting of the Plaintiffs and the Orthodox Jewish Community.</u>

The City, through its zoning code, limits new houses of worship not only by requiring that each applicant meet an onerous set of conditions, but also by providing the City with unlimited discretion to grant the Special Use Permit required for worship. The Shul had been targeted by the City for enforcement because of its religious activities, with the Mayor even stating in public that "Come July 29, 2021, 4380 University Place may be a residence and nothing more." (ECF No. 1 at 9.)

As detailed in Plaintiffs' Complaint (ECF No. 1), the City pursued criminal charges in the Shaker Heights, Ohio Municipal Court ("Municipal Case"), which was then appealed to Ohio's Eighth District Court of Appeals. It also filed a civil suit against the Plaintiffs in the Cuyahoga County Court of Common Pleas ("State Case"), attempting to obtain a Temporary Restraining Order and Preliminary and Permanent Injunctions against the Plaintiffs that would have effectively barred the Shul from gathering on the Property to pray (ECF No. 47-1 at 1; ECF No. 1 at 7-9).

1

## II. THIS LAWSUIT.

In the Summer of 2021, the Plaintiffs contacted Storzer & Associates, P.C. ("Storzer Firm"), a nationally known litigation firm representing religious institutions in, *inter alia*, land use discrimination cases, for representation against the City. **Exhibit 1**, Declaration of Roman P. Storzer dated January 16, 2023 ("SD") ¶¶ 5-7. The firm's investigation of the matter included analyzing relevant sections of the City's code, interviewing witnesses, reviewing court records, and various public statements by City officials and local residents. *See generally* Declarations at Exhibit 1. This time-consuming investigation had to be completed quickly because of the pending litigation in the State Case (ECF No. 47-1 at 1). It became readily apparent that the Plaintiffs had several viable claims and the evidence to prove that the City had violated their civil rights.

By late summer, the Storzer Firm had begun working with Tucker Ellis LLP, experienced land-use and litigation counsel (collectively "Counsel"), to investigate matters further and to draft a complaint to be filed in this Court. (ECF No. 1). This was, again, a time-consuming process that required further consideration of Sixth Circuit precedent, the City's code and its constitutional deficiencies, the Plaintiffs' ancillary claims under Ohio law, and the procedural requirements of practice in this District. What emerged was a comprehensive, multi-count complaint that was filed on October 13, 2021. (ECF No. 1).

Among other relief, Plaintiffs requested declaratory and injunctive relief, damages, and attorney's fees under 42 U.S.C. §§ 2000cc, *et seq.* (the Religious Land Use and Institutionalized Persons Act ("RLUIPA")), 42 U.S.C. § 1983, the Ohio Constitution, and common law. After limited motions practice and mediation (ECF Nos. 9 and 12), the City made an offer of settlement under Rule 68. (ECF 22.) The Parties then decided to enter into a global settlement of all

2

outstanding claims, which the Court made possible by extending the Rule 68 offer period many times to give the Parties time to negotiate. *See* ECF Nos. 32 and 45.

### III. THE SETTLEMENT.

The Settlement Agreement, entered into by the Parties and made part of an order of this Court (ECF Nos. 47-1 and 47), resolved the outstanding legal disputes between the Parties. It acknowledges that the Aleksander Shul has the right to operate a house of worship at the Property without having to seek any other City zoning approvals and provides a roadmap for improving the Property so it better fits the Aleksander Shul's needs and its mission. (ECF Nos. 47-1 at 4-5.) It also orders the payment of money from the City to the Plaintiffs, as well as a stipulation by Defendants that Plaintiffs are the prevailing parties in this Action for purposes of this attorney's fee petition, and also that Plaintiffs are in fact entitled to an award of attorney's fees. (ECF Nos. 47-1 at 9).

### ARGUMENT

### I. PLAINTIFFS ARE PREVAILING PARTIES AND ARE ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

In the Settlement Agreement, the Parties stipulated that Plaintiffs shall be "deemed to be the prevailing parties in the Federal Case" for the purposes of a fee award. (ECF No. 47-1 at 9.) Furthermore, the City agreed that "that the Plaintiffs shall be entitled to an award of attorneys' fees" and that this Court should determine the amount. *Id.*

The Parties' agreement on this issue accords with the law. Plaintiffs' successful litigation of their civil rights claims make them eligible for an award of attorney's fees. *See* 42 U.S.C. § 1988(b) ("§ 1988"). "Whether plaintiffs may obtain attorney's fees, then, hinges on whether they prevailed." *Miller v. Caudill,* 936 F.3d 442, 447 (6th Cir. 2019). This Court ordered the City

3

to allow the Property to be used as a house of worship, and also to make a payment to the Plaintiffs, thereby changing the legal relationship between the Parties. (ECF No. 47 at 2; ECF No. 47-1 at 3-4.) *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.,* 532 U.S. 598, 604 (2001) ("[S]ettlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees."); *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 620 (6th Cir. 2013) (settlement agreement enforced by consent decree can change the legal relationship between parties for § 1988 purposes).

## II. THE NUMBER OF ATTORNEY HOURS AND THE HOURLY RATES ARE REASONABLE.

### A. The Lodestar Method.

The Court determines an appropriate award of attorney's fees by using the Lodestar method. *Miller*, 936 F.3d at 452. That methodology entails multiplying a reasonable hourly rate by the number of hours each attorney worked on the case. *Id.* The product of those is the Lodestar, which the Court can then adjust as necessary. *Id.* "To prove that the purported fees are reasonable, the requesting party must provide 'evidence supporting the hours worked and rates claimed.'" *Truex v. Drivers Direct, LLC*, 583 F. Supp. 3d 1033, 1036 (N.D. Ohio 2022) (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992)). Fee awards under § 1988 include work performed by paralegals. *See Missouri v. Jenkins by Agyei,* 491 U.S. 274, 286-88 (1989) (attorney compensation at the market-level includes the services of paralegals).

In Exhibit 1 to this Motion, Counsel have included declarations detailing their legal experience, the hours worked in this matter, and descriptions of the tasks they performed.

B.     Counsel's Rates are Reasonable.

"To determine a reasonable hourly rate, courts use as a guideline the prevailing market rate, which is defined as 'the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'" *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) ("*Husted*") (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). "A reasonable fee is '*adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers*.'" *Gonter v. Hunt Valve Co.,* 510 F.3d 610, 616 (6th Cir. 2007) (quoting *Geier*, 372 F.3d at 791) (emphasis in original).

As shown in Exhibit 1, the rates claimed are those that Plaintiffs agreed to pay, and they are consonant with the market rates in this District that have been found "sufficient to encourage competent representation." *Gonter*, 510 F.3d at 618.

This District has granted awards using analogous federal fee-shifting statutes. *See Truex*, 583 F. Supp. 3d at 1036 ("In determining a reasonable rate, a court may also consider awards in analogous cases, and its own knowledge and experience from handling similar requests for fees." (internal citation omitted)). The Court awarded counsel, with a long career in civil rights, the rate of $795.68 per hour for his services in a Title VII case, despite losing some claims at trial. *Barrow v. City of Cleveland,* No. 1: 16CV923, 2018 WL 3105110, at *1-2 (N.D. Ohio June 25, 2018), *aff'd,* 773 F. App'x 254 (6th Cir. 2019). In *Husted*, the Court approved awards of $450 and $425 per hour for attorneys with substantial experience and expertise in election law cases in a case originating in the Southern District of Ohio. 831 F.3d at 718. For his services in a default judgment under the Fair Labor Standards Act, counsel was awarded $500 per hour. *Truex*, 583 F. Supp. 3d at 1036. However, as noted by the Court, that hourly rate represented the "outer bounds" given the nature of the action. *Id*.

5

This Court recently found "reasonable hourly rates for paralegals performing legal work in this district run typically between $100.00 and $130.00." *Renouf v. Aegis Relocation Co. Corp.*, No. 5:22-CV-497, 2022 WL 16963838, at *7 (N.D. Ohio Nov. 15, 2022) (citing *NOCO Co. v. Mac Calabur Invs., LLC*, No. 1:21-CV-2173, 2022 WL 2870900, at *2 (N.D. Ohio July 21, 2022)) (approving hourly paralegal rates of $100.00 and $125.00). However, these rates do not reflect the full range of awards in this District. *See WHG TM Corp. v. Patel,* No. 5:07 CV 3087, 2008 WL 495794, at *2 (N.D. Ohio Feb. 22, 2008) ("*WHG TM Corp.*") (awarding fees at the rate of $148.50 for a paralegal); *Noco Co. v. Valenzuela*, No. 1:19-CV-1276, 2021 WL 3725660, at *2 (N.D. Ohio Aug. 23, 2021) (citing with approval the awards granted in *WHG TM Corp.* for a paralegal).

The hourly rates selected for Counsel and support staff are equally reasonable and are in line with previous awards.

C. <u>Plaintiffs' Attorney Hours Were Necessary and Reasonable to Successfully Prosecute this Action.</u>

As declared by each attorney, Plaintiffs seek a fee award for the following attorneys and paralegals at the rates stated for Storzer and Associates, P.C. and Tucker Ellis, LLP.

| Storzer & Associates, P.C. | | | |
|---|---|---|---|
| Attorney | Experience | Hours | Rate Claimed |
| Roman Storzer | 26 years | 80.47 | $500.00 |
| Eric Treene | 29 years | 32.54 | $500.00 |
| Sieglinde Rath | 33 years | 96.76 | $500.00 |
| Jonathan Gross | 2 years | 193.27 | $500.00 |
| Samuel L. Speed | 19 years | 166.34 | $500.00 |

6

| Paralegal | Hours | Rate Claimed |
|---|---|---|
| Steven Silvia | 29.43 | $125.00 |
| Gina DeFrancisci | 30.42 | $125.00 |
| Bailey Nick | 25.64 | $125.00 |

| Tucker Ellis, LLP | | | |
|---|---|---|---|
| Attorney | Experience | Hours | Rate Claimed |
| John P. Slagter | 31 years | 179.60 | $465.00 |
| Lindsey E. Sacher | 11 years | 81.30 | $450.00 |
| Anthony R. Vacanti | 16 years | 5.20 | $460.00 |
| Danielle Easton | 2 years | 9.80 | $260.00 |

| Paralegal | Hours | Rate Claimed |
|---|---|---|
| Amanda Tomecko | 8.50 | $175.00 |

The Plaintiffs' Lodestar in this case is $421,587.75.  The rates applied to each attorney and support staff member are as shown above.

The Sixth Circuit Court of Appeals has set out 12 factors to consider in making adjustments to the Lodestar.

> "These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 349 n.8 (6th Cir. 2000) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471-72 n.3 (6th Cir. 1999)).

1. *The time and labor required by a given case.*

As discussed above, Counsel consumed the bulk of their time on the front end, investigating the complex relationship between the parties, gathering evidence, and drafting a seven-count, 199-paragraph Complaint. Plaintiffs relied upon factual assertions that had to be investigated individually and the intricate workings of the City's complicated zoning code provisions regulating houses of worship, as well as the history of the City's treatment of such institutions, especially Orthodox Jewish houses of worship.

2. *The novelty and difficulty of the questions presented.*

This case involved the interplay of the City's zoning code and freedom of religion issues. The Complaint was extremely detailed to present facts to support each claim. RLUIPA was enacted in 2000 but, aside from a few published opinions, even the Sixth Circuit has provided little guidance. Even in this District, Plaintiffs have not located a similar RLUIPA case on point. This matter was further complicated because of the simultaneous Municipal and State Cases.

3. *The skill needed to perform the legal service properly.*

Counsel are experienced litigators in similar cases involving RLUIPA and related constitutional protections of religious exercise, which include, among many others, favorable and novel decisions in the following cases: *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona, NY,* 945 F.3d 83 (2d Cir. 2019); *Jesus Christ Is The Answer v. Baltimore Cnty.*, Md, 915 F.3d 256 (4th Cir. 2019); *Bethel World Outreach v. Montgomery Cnty.*, 706 F.3d 548 (4th Cir. 2013); *Spirit of Aloha Temple v. County of Maui,* 49 F.4th 1180 (9th Cir. 2022); *Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, 980 F.3d 821 (11th Cir. 2020); *Hunt Valley Baptist Church, Inc. v. Baltimore Cnty., Maryland*, No. CV SAG-17-0804, 2020 WL

618662 (D. Md. Feb. 10, 2020); *Bensalem Masjid, Inc. v. Bensalem Twp., Pennsylvania*, No. CV 14-6955, 2022 WL 1488439 (E.D. Pa. May 11, 2022); and *Omar Islamic Ctr. Inc. v. City of Meriden*, No. 3:19-CV-00488 (SVN), 2022 WL 4599150 (D. Conn. Sept. 30, 2022). In addition to their litigation experience, Roman Storzer has published articles on the subject, *see, e.g.,* "Christian Parking, Hindu Parking: Applying Established Civil Rights Principles to RLUIPA's Nondiscrimination Provision," Richmond J. of L. & Pub. Interest (2013), and "The Religious Land Use and Institutionalized Persons Act Of 2000: A Constitutional Response to Unconstitutional Zoning Practices," George Mason L. Rev. (2001), and Eric Treene was the Special Counsel for Religious Discrimination at the United States Justice Department for nineteen years. He was a leader in the Department's efforts on religious liberty issues, including developing and overseeing its enforcement program for RLUIPA and overseeing religion-related litigation for the Department's Civil Rights Division under various other statutes. Exhibit 1, SD ¶¶ 5-7; Declaration of Eric W. Treene dated January 16, 2023 ("TD") ¶ 6.

4. *The preclusion of employment by the attorney due to acceptance of the case*.

As demonstrated in the attached Declarations, Counsel spent considerable time on this matter, which necessarily took focus from other areas of their work.

5. *The customary fee - fixed or contingent*.

Counsel's compensation for this type of work was based on an agreed hourly rate. There was no contingent fee agreement.

9

6. *Time limitations imposed by the client or the circumstances*.

Counsel began working with the Plaintiffs after the City had filed suit in the State Case. They were put under considerable strain to absorb the information the Plaintiffs presented and to conduct their own investigation. The City was aggressive in attempting to force the Plaintiffs to cease practicing their religion at the Property, which created great urgency to obtain judicial relief.

7. *The amount involved and the results obtained*.

In enacting RLUIPA, Congress noted that the law was meant to protect "new, small, or unfamiliar" congregations, like the Plaintiffs, that lack the connections of secular groups or the community standing of other faith groups. 146 Cong. Rec. S7774 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy). Plaintiffs now are permitted to practice their religion, despite the Mayor's adamant statement that "Come July 29, 2021, 4380 University Place may be a residence and nothing more." (ECF No. 1 at 9.) They have also received the other relief they sought in their complaint.

By every measure, Counsel have obtained excellent results for Plaintiffs. As the Sixth Circuit explained:

> A highly important *Johnson* factor is the *result achieved*. *Id.* at 435-36, 103 S.Ct. 1933. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435, 103 S. Ct. 1933. Generally, a "strong presumption" favors the prevailing lawyer's entitlement to his lodestar fee. *See City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*citing Blum,* 465 U.S. at 897, 104 S.Ct. 1541). Accordingly, "modifications [to the lodestar] are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Delaware Valley Citizens' Council,* 478 U.S. at 565, 106 S.Ct. 3088 (*citing Blum,* 465 U.S. at 898-901, 104 S.Ct. 1541). *See also Van Gerwen v. Guarantee Mutual Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000)..

*Adcock-Ladd,* 227 F.3d at 349-50.

Here, the Plaintiffs can now use the Property as a shul, which the Mayor vowed would be impossible. They have also been compensated for their damages, and the City has agreed they are entitled to their attorneys' fees. It is highly unlikely that, without a background in religious rights advocacy or local land use law, even a skilled litigator could have managed the results obtained here.

8. *The experience, reputation, and ability of the attorneys.*

As detailed in Exhibit 1, the lead attorneys working on this matter are well known in their fields and especially skillful. Both Mr. Storzer and Mr. Treene have advocated for the rights of religious institutions to worship free from discriminatory and onerous regulation since the 1990s and have recognized expertise in RLUIPA and related federal constitutional litigation. Exhibit 1, SD ¶ 7; TD ¶ 6. Mr. Slagter has deep expertise in local land use law in this District over the course of several decades. Exhibit 1, Declaration of John P. Slagter dated January 13, 2023, ("JS") ¶ 6. Their rates of $500 per hour for Mr. Storzer and Mr. Treene (SD ¶ 9 and TD ¶ 7) and $465 for Mr. Slagter, who worked at a reduced rate (JS ¶ 7), are nowhere close to those awarded in *Barrow* and fall within the upper bounds of $500 per hour described in *Truex* for Fair Labor Standards work.

Furthermore, an objective observer would likely conclude that the City was willing to resolve the matter on terms favorable to the Plaintiffs because of the evidence presented and the advocates presenting it. Equally important, experienced RLUIPA and local land use counsel were necessary to craft a settlement agreement and a development agreement that would be flexible enough to meet the needs of a minority congregation. (ECF No. 47-1 at 5.)

9. *The 'undesirability' of the case.*

Although this was not a factor in Counsel's willingness to take the case, Plaintiffs' dispute with the City required Counsel to gather and present a considerable amount of information in a short space of time.

10. *The nature and length of the professional relationship with the client.*

Until the Plaintiffs contacted Counsel, they had no connection, professional or otherwise.

11. *Awards in similar cases.*

See II.B, above, with respect to analogous cases.

D. <u>The Hours Spent Litigating this Matter were Reasonable.</u>

1. *Counsel worked diligently to obtain excellent results.*

Working under time constraints in a procedurally complex matter, Counsel sought to obtain judicial relief for Plaintiffs as soon as possible. The United States Supreme Court has stated: "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Counsel worked diligently to investigate this matter, determine the factual basis for Plaintiffs' claims, and drafted a complaint that led to judicial relief as can be seen from Counsel's time records in Exhibit 1. *See Rohrer Corp. v. Dane Elec.*, No. 1:10-CV-958, 2012 WL 3648904, at *2 (N.D. Ohio Aug. 23, 2012) ("Attorneys seeking fees must maintain time records that are sufficiently detailed to allow the court to determine the reasonableness of the hours expended with a high degree of certainty that the hours were actually expended."). The complexities of this matter and the City's aggressive stance required Counsel to be prepared to begin hard-fought litigation immediately. Attorneys are normally compensated by

12

their clients for the time spent preparing for suit, including investigation and complaint drafting. *See Webb v. Bd. of Educ. of Dyer Cnty., Tenn.,* 471 U.S. 234, 242-43 (1985) (pre-suit work is compensable under § 1988).

> 2. *Plaintiffs are entitled to an award of fees for attorney time consumed presenting this motion.*

Pursuant to Sixth Circuit precedent, Plaintiffs also seek attorney fees for drafting this motion. *See Husted,* 831 F.3d at 725 (district court must determine reasonable attorney's fees for the hours expended by plaintiffs in seeking their fee award).

### III. PLAINTIFFS ARE ENTITLED TO COSTS UNDER 28 U.S.C. § 1920.

Federal Rule of Civil Procedure 54(d) provides that "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The Sixth Circuit has held "this language creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *Singleton v. Smith*, 241 F. 3d 534, 539 (6th Cir. 2001) (quoting *White & White, Inc. v. American Hosp. Supply Corp.,* 786 F.2d 728, 730 (6th Cir. 1986)).

Under 28 U.S.C. § 1920, "A judge or clerk of any court of the United States may tax as costs the following: 1) Fees of the clerk and marshal; 2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; 3) Fees and disbursements for printing and witnesses; 4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; 5) Docket fees under section 1923 of this title; 6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." "The party objecting to the clerk's taxation has the burden of persuading the court that it was improper." *BDT*

*Prods., Inc. v. Lexmark Int'l, Inc.,* 405 F.3d 415, 420 (6th Cir. 2005) (citing 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2679 (3d ed. 1998)).

The City should be taxed $882.00 in costs.  Exhibit 1, JS Dec. ¶ 17,  **Exh. C**.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for attorney's fees and costs in the amount of $421,587.75.

Dated:  January 17, 2023

    Respectfully submitted,

**TUCKER ELLIS LLP**

/s/ John P. Slagter
John P. Slagter (0055513)
Lindsey E. Sacher (0087889)
Anthony Vacanti (0080834)
950 Main Ave Suite 1100
Cleveland, OH 44113
Tel: (216) 696-5863
john.slagter@tuckerellis.com
lindsey.sacher@tuckerellis.com
tony.vacanti@tuckerellis.com

**STORZER & ASSOCIATES, P.C.**

/s/ Roman P. Storzer
Roman P. Storzer, Esq., *pro hac vice*
Eric W. Treene, Esq., *pro hac vice*
Samuel L. Speed, Esq*., pro hac vice* .
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036

14

        Tel: (202) 857-9766
        Fax: (202) 315-3996
        storzer@storzerlaw.com
        treene@storzerlaw.com
        speed@storzerlaw.com

        *Attorneys for Plaintiffs*